Estate of Annie Fitler Howell, Deceased, Josephine Fitler Howell and Cooper Howell, Executors, v. Commissioner.
Estate of Howell v. Commissioner
Docket No. 108401.
United States Tax Court
1943 Tax Ct. Memo LEXIS 484; 1 T.C.M. (CCH) 481; T.C.M. (RIA) 43047; January 28, 1943
*484 Held, on the evidence, that a transfer in trust was not made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926 as amended by section 803 (a) of the Revenue Act of 1932. Thomas Hart, Esq., 1500 Walnut St., Philadelphia, Pa., and Robert T. McCracken, C.P.A., for the petitioners. Eugene G. Smith, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined a deficiency in estate tax against the petitioner in the sum of $91,398.50. The sole question presented for our consideration is, were gifts in trust made by Annie Fitler Howell in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926 as amended by section 803 (a) of the Revenue Act of 1932. Findings of Fact The decedent died on November 21, 1937, at the age of 86 years. At her death she was a resident of Torresdale, Philadelphia County, Pennsylvania. The petitioners are executors, duly appointed and qualified under the will of the decedent. Surviving the decedent were four children, aged 56, 53, 50, and 44 years, respectively, and two grandchildren, aged 20 and 17 years, respectively. For several years prior to April 28, *485 1932, the date of the creation of the trust in question (hereinafter referred to as the trust), the decedent made allowances of $200 a month to each of her children and gifts of substantial amounts to her two married daughters and their families. In some of these years these gifts amounted to more than the income which the decedent's children afterwards derived from the trust. Prior to the creation of the trust the decedent gave her son approximately $42,000 for the purpose of building a residence. Before creating the trust, the decedent transferred real property located at 1523 Walnut Street, Philadelphia, Pennsylvania, in trust for the benefit of her four children, which she, at that time, stated was for the purpose of reducing her income tax. The following is a summary in respect of the decedent's income and the tax thereon for the years 1928 to 1932, as well as in respect to her capital gains or losses in those years: SUMMARY OF INCOME TAX RETURNS, 1928-1932, OF ANNIE FITLER HOWELL
1928
1929
1930
1931
1932
Personal Income Excepting Trusts
52,796.80
67,168.97
39,901.77
36,669.21
10646.69
Total Income from Trusts
34,202.77
36,540.86
45,817.83
34,517.90
27,635.58
Gross Income
86,999.57
103,709.83
85,719.60
71,187.11
38,282.27
Net Income
82,391.98
99,155.78
82,019.94
67,625.68
34,891.47
Income Tax
8,732.12
9,695.92
7,015.94
700.26
2,195.55
Capital Gain or Loss
(1,131.72)
(14,019.63)
(8,973.86)
(39,520.52)
None
*486 The capital losses shown in the foregoing tabulation were sustained from the sales of securities which were made for the purpose of reducing income tax. At the end of 1931 the decedent had exhausted securities which could be sold at a loss to reduce taxes. Prior to the creation of the trust the decedent and her children had discussions at her home about her difficulty in meeting the quarterly income tax installments and what might be done to reduce these taxes. In the light of these discussions the decedent's son and unmarried daughter went, in March 1932, to the office of the decedent's attorney to confer with regard to their mother's affairs, after the mother had requested the son to do so. They explained that over a period of years the decedent had been assisting her four children financially, but due to the reduction in her income and increased income taxes she was finding it difficult to continue the financial aid to her children and to pay her own normal expenses. During the discussion the decedent's attorney was informed that the decedent had a life interest in several trusts from which she received substantial income and that she also owned outright securities producing *487 substantial income. The attorney suggested that the decedent create a trust for the benefit of her children with the securities she owned outright so that thereafter the children would receive the income therefrom and would themselves pay the income tax thereon. He reminded them that the decedent would then be left with sufficient income for her own living expenses by reason of her life interest in the several trusts. While he did not recall it he had little doubt that he also mentioned the fact that a collateral advantage of such a trust would be the reduction of the decedent's taxable estate. He also suggested that if the proposed trust was executed the decedent's will be revised because as it then stood the residue of the decedent's estate, most of which consisted of the securities owned by her outright and which were to become the corpus of the trust, should not be left in trust as it was in the will. The decedent's son and daughter reported to their mother the purport of their conference with her attorney and she fully understood it. The decedent was aware of the possibility that Congress might pass a gift tax law and when the trust was practically decided upon wanted to hasten *488 its execution to avoid the gift tax which might be imposed thereon. After his conference with decedent's son and daughter and as a result thereof, decedent's attorney drafted the trust instrument here involved and it was executed by the decedent on April 28, 1932, in the presence of the attorney who, in response to a request made by her, explained to her the effect the trust instrument would have in reducing her income tax liabilities and making it easier for her to do what she wished to do for her family and told her he thought it was a sound arrangement for her to make. The trust instrument provided, inter alia, that the income was to be paid in equal shares to her four children for their lives and upon the deaths of the three married children to their husbands or wife during their lives. Upon the deaths of their husbands or wife the income was to be paid to the issue of the decedent's children until they reached 25 years of age when the corpus of the trust was to be divided among such issue in the same proportion as the share of income he or she had theretofore received bore to the whole net income of the trust. Should any of the decedent's children die without issue, then *489 upon the death of his or her husband or wife the corpus was to be added to the shares in trust of the other children and their issue. Upon the death of the decedent's unmarried daughter her share of the income was to be divided equally among her issue, if any, until they reached 25 years of age when her share of the corpus was to be divided among her issue in equal shares in the same proportion as the share of income he or she had theretofore received bore to the whole net income of the trust. In the event of her death, leaving no issue, the corpus was to be added to the shares in trust for the other of the decedent's children and their issue. The trust provided that it should not continue beyond 21 years after the death of the survivor of those of the grantor's descendants who were living at the date of the deed of trust. The decedent retained no power to alter, amend, or revoke the trust, no control over the disposition of the corpus of the trust, and no interest in the income therefrom. There was no provision in the trust instrument as to the disposition of the trust estate in the event all of the designated beneficiaries of such estate died before the time fixed for distribution *490 to them. On the same day on which the decedent executed the deed of trust she revoked her former will, which had been executed on January 15, 1928, and executed a new will. The residuary clause of the will executed on January 15, 1928 disposed of all of the decedent's property, in trust, with the exception of her personal effects, certain real estate, and minor bequests to servants, in substantially the same manner, and to the same persons, as was the disposition of the property under the trust instrument in question. The residuary clause of the decedent's new will disposed of the decedent's residuary estate outright in equal shares to her four children and their issue per stirpes. Subsequent to April 28, 1932 the decedent discontinued making the $200 monthly allowances to her children, but continued to make gifts to them in varying amounts generally a great deal smaller in amount than those made prior to that date. The decedent was extremely interested in the welfare of her children. Two of her daughters, one of them a widow with a child, lived with her in her house, and a third, also with a child, lived in another house nearby on the decedent's estate, and all saw the decedent *491 daily. Her son also lived within the vicinity of Philadelphia and often visited her. The decedent was never reluctant to part with anything that would maintain her son and daughters in the manner to which they were accustomed to live. At the time of the transfer in question the decedent was 80 years of age. She had always enjoyed good health, was unusually strong until 1937, the year of her death, and was always bright and cheerful. She was very active and often walked a great deal. She also went driving with her chauffeur almost daily until about five or six months before she died. In the spring of 1932 she was not suffering from any illness and her mind was clear. On the day of the creation of the trust she was very alert and in good spirits. After the creation of the trust the decedent had sufficient income to maintain her style of living on the same scale as that maintained by her prior to the creation of the trust. The decedent's dominant motive in creating the trust was to reduce her income tax and thus enable herself and her children to continue to live on the same standard to which they had been accustomed. Her other motive was to avoid a gift tax. The respondent in his *492 determination of the deficiency herein included in decedent's gross estate the property transferred by decedent in trust at a value of $469,560.40. The transfer in trust was not made in contemplation of decedent's death. Opinion TYSON, Judge: The question presented for our consideration is whether the transfer in trust by the decedent was made in contemplation of death so as to be includable in the decedent's estate under section 302 (c) of the Revenue Act of 1926, as amended. [1] Petitioners contend that the controlling motive which prompted this transfer was one associated with life, not death. Respondent, on the other hand, contends that the transfer was primarily intended by the decedent as a substitute for a testamentary disposition of the property transferred to the natural objects of her bounty. *493 The test to be applied in determining whether a transfer is in contemplation of death is found in , where the Supreme Court said: As the transfer may otherwise have all the indicia of a valid gift, inter vivos, the differentiating factor must be found in the transferor's motive. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer * * *. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus give effect to the manifest purpose of the statute. Thus from a close examination of the record before us we must decide upon the dominant motive which impelled the decedent to make the transfer. If such motive was prompted by the thought of death, the transfer was made in contemplation of death and therefore includable in the decedent's gross estate. The burden of proving that the thought of death was not the dominant motive in making the transfer is, of course, on the petitioners. In our findings of fact we have concluded *494 that the petitioners have overcome the presumption that the transfer in question was in contemplation of death. This conclusion was reached as a result of the clear and uncontradicted testimony to the effect that the decedent was primarily interested in reducing her income taxes so as to continue her long established practice of making gifts to her four children and at the same time maintaining her own and their standard of living. The record shows that the decedent's gross income had declined from $103,709.83 in 1929 to $85,719.60 in 1930 and to $71,187.11 in 1931 and that she had been able to keep down her income taxes in those years by reason of taking capital losses on securities sold for that purpose. But the sales in 1931 had exhausted securities which could be sold at a loss to reduce taxes. Thus the decedent was faced with the problem of satisfying a desire to continue to enjoy for herself and her children the comforts of life as they had in the past, but having her capacity to do so constantly decreasing because of higher income taxes than she would have to pay if the trust was created. The solution to her dilemma came through advice from her attorney that she set up the *495 trust in question. In this manner her income tax would be reduced, she and her children could continue to live on the same scale as they had in the past by reason of trusts of which she was the life beneficiary, and at the same time her children would receive regular income as a substitute for the gifts which she had been accustomed to make to them and themselves pay such income tax as would be due thereon. It is our opinion that these were the dominant and determinative motives in causing the transfer. That such motives are associated with life and not with death is indicated in , which held gifts not to be in contemplation of death because the "immediate and moving cause of the transfers was the carrying out of a policy, long followed by decedent in dealing with his children of making liberal gifts to them during his lifetime". See also, ; , affirmed ; ; ; *496 ; ; ; ; and . There is also evidence to indicate that the decedent was desirous of avoiding gift taxes which Congress was about to impose, but this was a subordinate motive, also associated with life. . Other factors which indicate that this transfer was not made in contemplation of death are: that the decedent was in good health and took a keen and active interest in life in spite of her advanced years; that she was always bright and cheerful; that although the transfer constituted most of the property which she owned outright she was able to continue to live on the same scale as she had before the transfer by reason of income from trusts of which she was the life beneficiary; that she lived for more than five and one-half *497 years after the transfer; and that there is evidence to indicate that the decedent did not, at the time of making the trust, or prior thereto, consider death, with no evidence to the contrary. The respondent points out that the trust in question contained substantially the same provisions as the decedent's old will and that the decedent made a new will on the same day of the creation of the trust whereby she omitted the trust provisions. We have weighed this factor along with the others but do not consider that it necessarily indicates that the execution of the trust was the fruition of a plan to make disposition of the decedent's property conveyed to the trust, in substitution for a testamentary disposition of such property. Certainly the overwhelming evidence to the contrary indicates that such a plan was not the decedent's dominant motive in creating the trust. As the Board of Tax Appeals said in : True, decedent executed a new will simultaneously with the trust, making changes in an earlier will, occasioned by the trust. But, though that fact might, under some circumstances, have considerable significance *498 (; affd., ), it is not controlling. Particularly is this so, where, as here, the record demonstrates so clearly the motivating purpose for the creation of the trust to have been other than contemplation of death within the meaning of the controlling statute. That, and that alone, is decisive here. Having reached that conclusion as to the object of the trust, the new will was simply its logical practical complement. See also Nor is the fact that the decedent was 80 years of age necessarily indicative that the transfer was made with death in mind. As the Supreme Court said in : Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purpose associated with life, rather than with death, may motivate the transfer. See also ;;; *499 ;;; ; and . Accordingly, we hold that the trust created by the decedent was not made in contemplation of death. On brief respondent contends for the first time that the transfer in trust by decedent was intended to take effect in possession or enjoyment at or after death within the meaning of section 302 (c) of the Revenue Act of 1926, as amended, because there was no provision in the trust instrument for disposition of the corpus in the event of a complete failure of all designated possible beneficiaries of corpus before the time fixed for distribution to them and that in such contingency the principal of the trust would revert to the decedent's estate by operation of law. The determination of the deficiency was not based upon such a view, but expressly upon the alleged specific fact that the transfer was made in contemplation of death, *500 and such an issue was not presented by the petition and answer. The sole error assigned in the petition was, that the determination set forth in the deficiency notice "holding that the transfer by the decedent on April 28, 1932, of certain assets to an irrevocable trust was in contemplation of her death and that such assets therefore were taxable as a portion of the gross estate of decedent". The answer took direct issue with this allegation and set up no other issue. Had it been pleaded in respondent's answer opportunity would have been afforded the petitioners to controvert it. In these circumstances, we decline to consider this contention. Decision will be entered for the petitioners. Footnotes
1. SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated - (c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * *. [as amended by section 803 (a) of the Revenue Act of 1932]↩